**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| COREY MORRIS,<br><br>              *Plaintiff,*<br><br>        v.<br><br> MARC SIM, et al.,<br><br>              *Defendants.* | No. 2:25-cv-16371<br>    (MEF)(JSA)<br><br><br>**OPINION and ORDER** |

\*     \*     \*

For the purposes of this brief Opinion and Order, the Court largely assumes familiarity with the facts and procedural history of this case.

\*     \*     \*

The Plaintiff[1] is a state prison inmate.

His basic allegations: (i) that he has filed various New Jersey lawsuits;[2] (ii) that during 2024, he was transferred to a "close supervision [housing] unit," where he had "very limited access to the [prison's] law library," and "no direct hands on access to . . . law books";[3] (iii) that he needed certain "law books"[4] to "do legal research and properly and effectively prepare . . .

---

[1]  Corey Morris.

[2]  See Complaint (ECF 1-2) at 13-14; see also id. at 27 (listing cases).

[3]  Complaint at 18-19, 23.

[4]  The 2024 Edition of the New Jersey Criminal Code Annotated (Title 2C), and the 2024 Edition of the Rules Governing the Courts of the State of New Jersey.  See Complaint at 19.

for his cases";[5] and (iv) that when he ordered the books, certain prison administrators did not allow him to put hands on one of them, because the book was "too big or too heavy," and was "reject[ed]" based on "[s]afety," "security," and "space concerns."[6]

*    *    *

In light of the above, the Plaintiff sued various prison officials, among others, alleging violations of his federal Constitutional rights,[7] see Complaint at 34-38, and seeking declaratory and injunctive relief, plus damages.[8]

Some of the prison officials (from here, "the Defendants") have now moved to dismiss.  See Notice of Motion to Dismiss (ECF 4) (Defendants Calicchio, Berryman, Gray, Iacobucci, Crowell, Shakir, Griffin, Bobien, and Sim).[9]

---

[5]  Complaint at 28; see also id. at 19.

[6]  See Exhibit 10 to Complaint (ECF 1-2) at 55; see also Complaint at 20-22, 24-25.  The copy of the Rules Governing the Courts of the State of New Jersey was allegedly rejected.  But the Plaintiff asserts that he received the New Jersey Criminal Code Annotated.  See Complaint at 21-22.

[7]  Per the Plaintiff, the Defendants violated his right to free speech (Count I) and access to the courts (Count II), each under the First Amendment.  See Complaint at 33-35.  Interfered with his Sixth Amendment right to counsel (Count III).  See id. at 35-36.  Breached his "administrative appeal rights" under the Fourteenth Amendment (Count IV).  See id. at 36-37.  And "conspired" and "abused the process . . . in violation of [his rights under the] First, Fifth, Sixth and Fourteenth Amendments" (Counts V and VI).  See id. at 37-38.  The Plaintiff's complaint also refers once to the New Jersey State Constitution, see id. at 12, but does not seem to press any state-law claims.  Cf. id. at 34-38.

[8]  See Complaint at 39, 42 (describing the injunctive and declaratory relief sought); see id. at 12 (explaining that the Plaintiff seeks damages).

[9]  In addition to the moving Defendants, the Plaintiff pressed claims against four other people and two institutions.  But none

2

Their motion is granted in part and denied in part.

*    *    *

First, the motion is granted as to (i) the Plaintiff's federal claims against the Defendants in their official capacities, (ii) the Plaintiff's Fifth and Sixth Amendment claims, and (iii) any claims the Plaintiff may potentially have raised here[10] under state law.

The Plaintiff has conceded that these claims do not work.  See Brief in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Brief") (ECF 8) at 1, 8-9.

So they are dismissed.  See Hollister v. U.S. Postal Serv., 142 F. App'x 576, at *1 (3d Cir. 2005).

*    *    *

Second, and as to what remains, the motion is granted to the extent the Plaintiff seeks compensatory damages for alleged violations of federal law.

Under the Prison Litigation Reform Act, "[n]o Federal civil action may be brought by a prisoner confined in a . . . prison . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."  42 U.S.C. § 1997e(e).

Here, the Plaintiff alleges that he suffered "physical injury." See Complaint at 34-38.

But the physical-injury allegation is not backed up by any factual information.  Nothing in the complaint as to what the alleged physical injury is.  When and where it happened.  Or how it came about.

This is not enough.  Here, physical injury is an element of a Prison Litigation Reform Act compensatory damages claim.  But just alleging an element does not, standing alone, check the box.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that "bare assertions [that] amount to nothing more than a 'formulaic recitation of the elements'" are insufficient to

---

of these has yet appeared.

[10]  See footnote 7.

survive a motion to dismiss) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

It is not sufficient to simply say in the complaint that there has been physical injury.  At least some underlying who/what/when/where/how information must be alleged --- to put meat on the bones, and by doing so to plausibly show that there was, in fact, a physical injury.  See Mitchell v. Horn, 318 F.3d 523, 535-36 (3d Cir. 2003) (explaining that a plaintiff subject to the PLRA must "describe the extent of his physical injuries" with enough specificity "to determine whether his injuries are more than de minimis").

In a notice-pleading regime, stating the legal theory under which a person seeks to recover might be enough to survive a motion to dismiss.  See Twombly, 550 U.S. at 555.  But in our current pleading regime, some factual allegations are needed. See id. at 555-56.  And as to physical injury, there are none.

This means that under the Prison Litigation Reform Act the Plaintiff cannot seek compensatory damages based on any "mental or emotional" distress he has allegedly suffered.  42 U.S.C. § 1997e(e).

And here, that marks the end of the road as to compensatory damages.  As the Court "read[s] his complaint, the only actual injury that could form the basis for the award [of compensatory damages the Plaintiff] seeks would be mental and/or emotional injury" --- because under Third Circuit law "the abstract value of a constitutional right" cannot itself be the basis for compensatory damages.  Allah v. Al-Hafeez, 226 F.3d 247, 250-51 (3d Cir. 2000) (quoting Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986)); see also Doe v. Delie, 257 F.3d 309, 314 n.3.[11]

\* \* \*

Third, and as to the Plaintiff's remaining First Amendment claims, the Defendants' motion is denied.

---

[11]  The Prison Litigation Reform Act does not limit the Plaintiff's claims to the extent he seeks injunctive or declaratory relief, or nominal and punitive damages.  See Mitchell, 318 F.3d at 533-34.

4

Under Turner v. Safley, 482 U.S. 78 (1987), "when a prison regulation [allegedly] impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89.

There are four key Turner factors for "determining the reasonableness of [a] regulation." Id. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Id. Second, courts must inquire into "whether there are alternative means of exercising the right [at issue] that remain open to prison inmates." Id. at 90. Third, courts must evaluate "the impact accommodation of the asserted constitutional right will have on guards and other inmates." Id. And fourth, courts must ask there are "ready alternatives" to the regulation. Id.

For the reasons laid out by the Plaintiff, see Plaintiff's Brief at 2-6, the Turner factors cannot be properly evaluated here without some factual development.

For example, it is all-but impossible to assess the third "impact" factor, see Turner, 482 U.S. at 90, without at least a modest understanding of the facility where the Plaintiff is held and its security needs.[12]

Similarly, it is difficult to tackle the fourth "ready alternatives" factor, id. at 90, without some fact-based sense of the other channels that may have been available to the Plaintiff for consulting law books.[13]

And the somewhat fuller factual picture that is necessary to perform a meaningful Turner analysis here also precludes, for

---

[12]  And note that, as to the cases cited by the Defendants, a particular weight limit on books may pass muster at one facility but not another, given the facilities' operational needs, populations, etc.

[13]  The Plaintiff acknowledges that, in some circumstances, "prisoners may read [certain materials] in the law library." Complaint at 25. But he also alleges that he was told by a prison official that "[b]ooks" were "no longer authorized" in his housing unit. See Exhibit 5 to Complaint at 50.

now, a qualified immunity analysis.[14]

\*     \*     \*

For the above-stated reasons, the motion to dismiss at ECF 4 is granted in part and denied in part.[15]

IT IS on this 3rd day of June, 2026, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

_____

[14]  The question of whether the access-to-courts claim has been adequately made out is a close one, because the Plaintiff has not set out in detail how he was injured by not having the relevant law book.  See Rivera v. Monko, 37 F.4th 909, 915 (3d Cir. 2022) (requiring an "actual injury" be articulated to state a claim for denial of access to the courts).  But for now, the claim clears the bar.  First, when he drafted the complaint, the Plaintiff was proceeding pro se.  Second, the Plaintiff was pursuing various lawsuits in New Jersey state court, see Complaint at 13-14, 27, and it stands to reason that the relevant law book (about the New Jersey rules of court) may have been helpful to those New Jersey lawsuits.  And third, it can be especially difficulty for a non-lawyer to explain how he was injured by not having access to a given law book.  How is a non-lawyer to articulate the incremental injury of not having a particular law book?  How can he readily pinpoint the precise legal argument he might have made if he had the law book?  After all, the non-lawyer may not be aware of the unmade legal argument until he is able to read the law book.  Cf. United States v. N.Y., New Haven & Hartford R.R. Co., 355 U.S. 253, 256 n.5 (1957) ("The ordinary rule ... does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."); Makdisi v. U.S. Dep't of State, 2026 WL 1217053, at *9 (D.N.J. May 5, 2026).

[15]  Hard to tell whether he Plaintiff's Fourteenth Amendment claim as to his "administrative appeal rights," see Complaint at 36-37, is live.  The Plaintiff does not seem to clearly concede this claim.  And for their part, the Defendants do not meaningfully take it up.  The Court does not address the appeal-rights claim here.